UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

EUGENE NABORS,

    Plaintiff,

v.                                  CIVIL ACTION NO. 5:22-cv-00059

SR. TROOPER J.L. TINCHER,

    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending is Defendant Sr. Trooper J.L. Tincher's Motion to Dismiss, filed June 7, 2022. [Doc. 16]. Sgt. D.P. White having been dismissed pursuant to the Plaintiff's Amended Complaint [Doc. 14], the matter is ready for adjudication.

### I.

On February 11, 2020, two rival schools -- Greenbrier East High School and Woodrow Wilson High School -- were scheduled to play a regular season girls' basketball game. [Doc. 1 ¶ 9]. Plaintiff, Eugene Nabors, is an assistant coach for the Woodrow Wilson High School girls' basketball team. [*Id.* ¶ 11]. Governor Jim Justice is the coach for the Greenbrier East High School girls' basketball team, and on the night of the Greenbrier East versus Woodrow Wilson game, his security detail was comprised of Sgt. D.P. White and Trooper Tincher. [*Id.* ¶¶ 7–8].

During a timeout in the fourth quarter of the game, Mr. Nabors, an African American man, walked over to the baseline to talk to Woodrow Wilson High School administrators about the Greenbrier East crowd "yelling racial slurs and epithets" at Woodrow Wilson's players

and coaching staff. [*Id.* ¶ 14]. Two Greenbrier East fans aggressively interrupted this conversation and attempted to instigate a confrontation in the group. [*Id.* ¶ 17]. Although Mr. Nabors was not aggressive in response to this interruption, the two Woodrow Wilson administrators to whom he had been speaking stepped between Mr. Nabors and the two Greenbrier East fans to prevent an altercation. [*Id.* ¶ 18].

Noticing these events, Trooper Tincher and Sgt. D.P. White approached the group. [*Id.* ¶ 19]. At that same time, Mr. Nabors' adult son also approached the group. [*Id.*]. As Mr. Nabors attempted to usher his son back into the stands, Trooper Tincher followed Mr. Nabors towards the stands, ultimately pushing him and causing him to fall backwards and become injured. [*Id.* ¶¶ 20–22]. Mr. Nabors was allegedly further injured by Sgt. White before being handcuffed and questioned outside of the gymnasium by the two officers. [*Id.* ¶¶ 23–24]. During this discussion, Mr. Nabors inquired about the reasoning behind his arrest. [*Id.* ¶ 25]. Sgt. White stated that Mr. Nabors had pushed Trooper Tincher, a fact that Trooper Tincher later denied occurred. [*Id.* ¶¶ 25–26].

Mr. Nabors was then transported to the Lewisburg Detachment of the West Virginia State Police, where he was detained and eventually released. [*Id.* ¶ 27]. In his "Report of Criminal Investigation," Trooper Tincher stated that before he pushed Mr. Nabors, Mr. Nabors had grabbed his arms to physically restrain him. [*Id.*]. Mr. Nabors claims that this statement contradicts the video surveillance. [*Id.*].

Following the game, these events captured national attention due to Governor Justice's post-game remarks, in which he called the Woodrow Wilson High School team "a bunch of thugs." [*Id.* ¶ 28]. Governor Justice later said that it was "totally absurd" to infer racial

undertones in his statement. [*Id.* ¶ 29]. However, less than one week later, Governor Justice apologized for those remarks, claiming that he "never dreamed it would bother anyone." [*Id.* ¶ 30].

On February 2, 2022, Mr. Nabors filed suit against Trooper Tincher and Sgt. White in federal court under 42 U.S.C. § 1983. [Doc. 1]. In his complaint, he alleged that the officers violated the Fourth and Fourteenth Amendments by depriving him of the right to be free of unreasonable seizures and of the right to due process of law. [*Id.* ¶¶ 31–36]. He further alleged that both Trooper Tincher and Sgt. White used excessive force in unreasonably seizing him in violation of the Fourth Amendment. [*Id.* ¶¶ 37–41]. Finally, Mr. Nabors alleged that both officers committed the torts of assault and battery against him. Mr. Nabors, therefore, prayed for relief for all recoverable damages, including those available under 42 U.S.C. § 1983, and demanded a trial by jury on all issues. [*Id.* at 9–10].

Defendants timely filed an Answer to Mr. Nabors' Complaint on March 7, 2022, denying the allegations in the Complaint and pleading affirmative defenses. [Doc. 6]. On April 15, 2022, Mr. Nabors moved the Court for permission to amend his Complaint and withdraw his claims against Sgt. D.P. White, as well as his claim of false arrest, false imprisonment, and/or unlawful detention. [Doc. 9]. The Court granted this Motion by Order on May 24, 2022. [Doc. 13]. Mr. Nabors filed his Amended Complaint that same day, [Doc. 14], and Sgt. White was terminated as a Defendant pursuant to this Amended Complaint.

On June 7, 2022, Trooper Tincher, through his counsel, filed an Answer to the Amended Complaint. [Doc. 15]. On that same date, pursuant to Rule 12 of the *Federal Rules of Civil Procedure*, Trooper Tincher filed a Motion to Dismiss the Plaintiff's Amended Complaint with prejudice, [Doc. 16], and a Memorandum of Law in Support, [Doc. 17]. Mr. Nabors filed a

Response in Opposition to the Motion to Dismiss on June 21, 2022. [Doc. 20]. Trooper Tincher filed a Reply on June 27, 2022, largely repeating his grounds for dismissal. [Doc. 21].

## II.

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Twombly*, 550 U.S. at 562-63); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 558. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *McCleary-Evans*, 780 F.3d at 585; *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Wright v. North Carolina*, 787 F.3d 256, 270 (4th Cir. 2015); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal quotation marks and citation omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned,

4

the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly* 550 U.S. at 570. The Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III.

Trooper Tincher moves to dismiss on four grounds, specifically that (1) the doctrines of judicial and collateral estoppel bar Mr. Nabors' claims, (2) he is entitled to qualified immunity from suit, (3) his use of force was reasonable under the Fourth Amendment, and (4) Mr. Nabors has failed to plead sufficient facts to show that he acted with intent as required in assault and battery claims. [Doc. 17 at 6–18].

**A. Judicial Estoppel**

First, Trooper Tincher claims that Mr. Nabors' claims are barred by the doctrine of judicial estoppel, based upon Mr. Nabors' stipulation of facts in his prior criminal proceeding related to the events at issue here. The specific language at issue reads as follows:

> [I]n an effort to eliminate the potential for an escalation, Sr. Tpr. J.L. Tincher was seeking to remove and escort co-defendant Donte Nabors from the building, and in approaching said co-defendant, the Defendant Eugene Nabors, understandably perhaps, but *intentionally and perhaps unlawfully attempted to intervene in the Officer's pursuit of co-defendant Donte Nabors physically laying on of hands on*

> *said trooper who then reasonably pushed defendant Eugene Nabors away* in an effort to gain control of co-defendant Donte Nabors and prevent the reasonably perceived threat of violence involving the parties.

[Doc. 16-2 at 4] (emphasis added). Trooper Tincher argues that, because Mr. Nabors stipulated to the reasonableness of Trooper Tincher's use of force in his Resolution of Charges, he cannot now argue that the use of force was unreasonable.

Also known as the doctrine of preclusion of inconsistent statements, judicial estoppel is "a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court." *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007); *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995) ("The vice which judicial estoppel protects is the cold manipulation of the courts to the detriment of the public interest."). Although "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982), the United States Court of Appeal for the Fourth Circuit has determined that "[t]hree elements must be satisfied before judicial estoppel will be applied." *Zinkand*, 478 F.3d at 638.

First, "the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation." *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996). Second, "the prior inconsistent position must have been accepted by the court." *Id.* Finally, "the party sought to be estopped must have 'intentionally misled the court to gain unfair advantage.'" *Id*. Our Court of Appeals has long held this third "bad faith" element is the "determinative factor." *Id.* (citing *John S. Clark Co. v. Faggert & Frieden*, 65 F.3d 26, 29 (4th Cir. 1995)); *see also Tenneco Chems. v. William Burnett & Co.*, 691 F.2d 658, 665 (4th Cir. 1982).

Because it is intended to "prevent the improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court *at its discretion*." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal citations omitted) (emphasis added). However, our Court of Appeals has dictated that the doctrine "'must be applied with caution' and only 'in the narrowest of circumstances.'" *Gilliam v. Sealey*, 932 F.3d 216, 233 (4th Cir. 2019) (quoting *Lowery*, 92 F.3d at 224).

Taking the facts in the light most favorable to the non-movant, the Court is not satisfied that the necessary elements to judicial estoppel have been met. Although it is clear from the evidence thus far that Mr. Nabors stipulated to certain facts as part of his Resolution of Charges, there is nothing in the record to establish Mr. Nabors had the requisite "bad faith" in alleging contrary facts in his Amended Complaint. Therefore, dismissal at this stage of litigation on these grounds would be inappropriate.

**B. Collateral Estoppel**

Next, Trooper Tincher argues that the stipulation of facts and resolution of Mr. Nabors' criminal proceedings related to the events at issue precludes Mr. Nabors from pursuing the causes of action alleged in his Amended Complaint.

Collateral estoppel, also referred to as issue preclusion, "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Hately v. Watts*, 917 F.3d 770, 777 (4th Cir. 2019) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). This "protect[s] against 'the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent

decisions.'" *Taylor*, 553 U.S. at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). However, "[i]ssue preclusion applies only when 'the issues in each action [are] identical, and issues are not identical when the legal standards governing their resolution are significantly different.'" *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 380 (4th Cir. 2017) (internal citation omitted). Additionally, the Restatement (Second) of Judgments states, in pertinent part, that "[a]n issue is not actually litigated if . . . it is the subject of a stipulation between the parties." Restatement (Second) of Judgments § 27, cmt. e; *see also Orca Yachts L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002) (citing Restatement (Second) of Judgments § 27 and noting "issue preclusion applies only when an issue has been actually litigated").

The collateral estoppel claim asserted here relies entirely on the statements in the Stipulation of Facts executed by Mr. Nabors as part of his Resolution of Charges in his prior criminal case. Had Mr. Nabors proceeded to trial in that case, the legal standard governing the resolution of the issues there would have been significantly different than the legal standard in the present case. Additionally, as stated in the Restatement (Second) of Judgments, issues that are the subject of a stipulation between parties are not considered "litigated." *Id.* Without prior litigation on the issue, the defense of preclusion is foreclosed. Accordingly, the Court finds that dismissal based on the doctrine of collateral estoppel is not warranted in this case.

### C. *Qualified Immunity*

Government officials are protected by qualified immunity when "performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which [an objectively] reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Anderson v. Creighton*, 483 U.S. 635, 630 (1987).

Determining whether qualified immunity is appropriate involves a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, the court considers "whether a constitutional right would have been violated on the facts alleged." *Id.* at 200. Next, the court examines whether that constitutional right was "clearly established" at the time of the alleged violation, i*d.* at 202, meaning "the contours of the right [are] sufficiently clear that a reasonable official would understand that what [she] is doing violates that right." *Anderson*, 483 U.S. at 630*; see also Ray v. Roane*, 948 F.3d 222, 228 (4th Cir. 2020). In making the *Saucier* inquiry, the court has discretion to decide which of the two steps to address first, based on the facts and circumstances of the case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In determining whether a right was clearly established, courts examine cases of controlling authority existing at the time of the incident or "a robust 'consensus of cases of persuasive authority'" that have illustrated similar violative conduct. *Ashcroft v. al-Kidd*, 536 U.S. 731, 742 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). However, "officials can still be on notice that their conduct violates established law even in novel factual situations" or instances where the "reasoning, though not the holding" establishes the right. *Hope v. Pelzer*, 536 U.S. 730, 741, 743 (2002). The focus, according to the Supreme Court, is whether the officials had "fair and clear warning" of the unlawfulness of their actions. *Id.* at 746 (citing *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

Although the constitutional right violated can be determined prior to trial, "[t]he question of whether a reasonable officer would have known that the conduct at issue violated [a constitutional] right . . . cannot be decided prior to trial if disputes of the facts exist." *Ray*, 948 F.3d at 228 (citing *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015)). Here, the parties dispute whether Mr. Nabors' actions prior to being pushed made Trooper Tincher's use of force reasonable

under the circumstances. Mr. Nabors claims that he was "in a defenseless position with his hands and arms stretched wide," [Doc. 20 at 3], while Trooper Tincher contends that Mr. Nabors was "physically restraining the officer." [Doc. 17 at 15]. It is necessary to further develop the disputed factual issue in order to properly assess the reasonableness of Trooper Tincher's actions in pushing Mr. Nabors.

On that same basis, the Court finds that it need not delve into the particulars of Trooper Tincher's final ground for dismissal at this time. Because conflict between the parties exists surrounding the facts in this case, the issue of intent for Mr. Nabors' assault and battery claims is a question of fact best adjudicated following presentation of a fully developed evidentiary record. At this stage of the case, Mr. Nabors is required only to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. Mr. Nabors' allegations as set forth in his Amended Complaint satisfy this standard.

## IV.

For the foregoing reasons, the Court **DENIES** Trooper Tincher's Motion to Dismiss Plaintiff's Amended Complaint. **[Doc. 16].**

The Court directs the Clerk to transmit a copy of this Memorandum Opinion and Order to counsel of record and to any unrepresented party.

ENTER: December 19, 2022



Frank W. Volk
United States District Judge